COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Huff, Judges Humphreys, Beales, Alston, Chafin, Decker, O'Brien, Russell,
           AtLee and Malveaux
Argued at Richmond, Virginia

EDY CANALES

v.      Record No. 1073-16-4

MARVIN ALEJANDRO TORRES ORELLANA

OPINION BY
JUDGE ROBERT J. HUMPHREYS
JUNE 20, 2017

UPON A HEARING EN BANC

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Jeanette A. Irby, Judge

Tanishka Cruz (Angela Ciolfi; Rebecca Wolozin; Simon Sandoval
Moshenburg; Laura Jacobson; Legal Aid Justice Center; L & L
Immigration Law, PLLC, on briefs), for appellant.

William H. Hurd (Laura Anne Kuykendall; Troutman Sanders LLP,
on brief), for appellee.

Amici Curiae: Trevor S. Cox, Deputy Solicitor General (Mark R.
Herring, Attorney General; Stuart A. Raphael, Solicitor General;
Matthew R. McGuire, Assistant Solicitor General, on brief); Kids
in Need of Defense (Jessica Leal; Kevin P. Broughel, on brief);
Detained Children's Program, Capital Area Immigrants' Rights
Coalition (Mari Dorn-Lopez; Elizabeth Nehrling Sotiriou; Kevin P.
Broughel, on briefs); Virginia Bar Association Commission on the
Needs of Children (Robert M. Rolfe; Geri M. Greenspan; Hunton
& Williams LLP; Margaret Ivey Bacigal, on brief), for appellant.

Edy Canales ("Canales") appeals the May 31, 2016 judgment of the Circuit Court of

Loudoun County (the "circuit court") holding that it did not have jurisdiction to make the

predicate findings of fact required for her child ("M.C.") to acquire Special Immigrant status for

federal immigration purposes. Specifically, Canales' two assignments of error assert that the

circuit court erred in finding that it lacked subject matter jurisdiction to make the specific

findings of fact required by federal law to receive special immigrant status and further erred in declining to make the specific findings of fact she requested for that purpose.

## I.  BACKGROUND

### A.  Statutory Background

Federal immigration law provides that an immigrant child living in the United States may become a lawful permanent resident by obtaining Special Immigrant Juvenile ("SIJ")[1] status, which was intended to provide protection to abandoned, abused, and neglected non-native children through permanent residency status in the United States.  8 U.S.C. § 1101(a)(27)(J).

The Supreme Judicial Court of Massachusetts recently authored an opinion with a succinct explanation of the statutory background of the federal SIJ statute:

> In 1990, Congress amended the Immigration and Nationality Act (INA) to include the SIJ classification to create a pathway to citizenship for immigrant children.  Pub. L. 101-649, § 153, 101st Cong., 2d Sess. (1990).  When the SIJ classification was first included, the statute required a State court to issue an order finding that (1) the child was dependent on a juvenile court and was eligible for long-term foster care, and (2) it was not in the child's best interests to return to his or her country of origin.  Id.  Since then, the provision of the INA concerning SIJs has been amended several times.  See Matter of Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 107-108, 973 N.Y.S.2d 714 (N.Y. 2013) (*Marcelina M.-G.*) (explaining various amendments to the INA concerning SIJ status).  In 1997, Congress modified the definition of SIJ to include a child who was "legally committed to, or placed under the custody of, an agency or department of a State" and added the requirement that eligibility for long-term foster care be "due to abuse, neglect, or abandonment."  Pub. L. 105-119, § 113, 111 Stat. 2440 (1997).  In 2008, the William Wilberforce Trafficking Victims Protection Reauthorization Act (TVPRA) further amended the INA to expand eligibility for SIJ status to include immigrant children who were placed in the custody of an "individual or entity appointed by a State or juvenile court" and eliminated the requirement of

---

[1] "Special Immigrant Juvenile" or "SIJ" is a term and acronym used by United States Citizenship and Immigration Services (USCIS), the parties, *amici curiae*, and by some of the courts of our sister states as a shorthand reference to the definition of the term "special immigrant" that is applicable to certain juveniles that meet the requirements of 8 U.S.C. § 1101(a)(27)(J).

> long-term foster care eligibility. Pub. L. 110-457, § 235(d)(1), 122 Stat. 5044 (2008). The amendment added the requirement that the reunification with one or both parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law. Id.

Recinos v. Escobar, 473 Mass. 734, 737 (2016).

The current statutory definition of a Special Immigrant as it relates to a juvenile alien (SIJ) is as follows:

> The term "special immigrant" means-- . . .
>
> (J) an immigrant present in the United States--
>
>> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;
>>
>> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and
>>
>> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status.

8 U.S.C. § 1101(a)(27)(J). In addition to the above statutory factors, the juvenile immigrant must also be under the age of twenty-one and unmarried. 8 C.F.R. 204.11(c). Further, pursuant to 8 C.F.R. § 204.11(d)(2), an application for SIJ status must include at least one document evidencing that a state juvenile court has made the requisite SIJ findings of fact. Thus, before a child may obtain SIJ status, a petitioner must first obtain a judgment from a state juvenile court that satisfies the criteria set out by Congress in subsection (i) of 8 U.S.C. § 1101(a)(27)(J); second, a determination must be made in administrative or judicial proceedings that it would not

be in the child's best interests to be returned to their native country; and finally, the Secretary of Homeland Security or his designee must actually grant the status of Special Immigrant Juvenile.

## B. Background of the Case

M.C. is the child of Canales and Marvin Alejandro Torres Orellana ("Father"). Canales is a native of Honduras who emigrated to the United States in 2006, leaving M.C., who was approximately two years old at the time, in the custody of Canales' mother in Honduras. On June 16, 2015, Canales petitioned the Loudoun County Juvenile and Domestic Relations District Court (the "JDR court") for sole custody of M.C., whom she had retrieved from her mother's home in Honduras, and further that the court make what are collectively and generically referred to in the pleadings and briefs of the parties and *amici curiae* as "SIJ findings of fact." Specifically, Canales asked the JDR court to award her sole custody of M.C. and make specific factual findings that M.C. had been "abused" and "abandoned" by Father and that it was not in M.C.'s "best interest to be returned to [Honduras,] his native country," as those terms are used in 8 U.S.C. § 1101(a)(27)(J). Because Father resides in Honduras, with his exact whereabouts unknown, he was served notice of the petition and hearing by publication; he did not appear and was unrepresented at the hearings in the lower courts.[2] The JDR court granted Canales sole custody of M.C., but declined to make the additional specific SIJ findings of fact she requested. Canales timely appealed to the circuit court.

At the circuit court hearing, Canales testified regarding information received from others in Honduras that Father drank heavily, had little contact with M.C., and repeatedly threatened to take M.C. from his grandmother unless the grandmother paid him money. Following the

---

[2] Due to the significance of the issues in the assignments of error, this Court appointed counsel to represent Father in this appeal, and the Attorney General was invited to submit a brief and argue as *amicus curiae*. Appointed counsel attempted to contact Father to make him aware of the proceedings, but his attempts were unsuccessful.

hearing, the circuit court also granted Canales sole custody of M.C., finding that Canales "has taken sole responsibility for the upbringing and care of the child." However, like the JDR court, the circuit court denied Canales' request for additional specific SIJ findings, reasoning that it did not have jurisdiction to do so. The circuit court entered two separate orders. The first, a custody order in Case No. CJ15-127 (the "custody order"); the second, an order regarding SIJ findings of fact in Case No. CJ15-128 (the "SIJ order").[3] Both orders were originally drafted by counsel for Canales and submitted to the circuit court at the hearing; however, prior to entering the orders, the circuit court altered the orders to reflect both the findings the circuit court made and, just as significantly, those it declined to make.

In the custody order, the circuit court made findings based on the best interests of the child factors delineated in Code § 20-124.3. The circuit court's factual findings included that Father "has not maintained a relationship with [M.C.] nor had positive involvement with the child's life" and that "mother has taken sole responsibility for the upbringing and care of the child." The court further found that "there is no indication that [M.C.'s F]ather intends to play a role in the minor child's upbringing and care in the future, as the [F]ather [has] not been made aware of [M.C.]'s location." The circuit court noted that it was unable to make any finding as to either Canales' or Father's "willingness and ability to maintain a close and continuing relationship" with M.C. Although the custody order as submitted by Canales contained language indicating that the circuit court had made the SIJ findings sought by Canales, the circuit court crossed out those portions before entering the order.[4] In place of the stricken language, the

_____

[3] The record does not reflect the reason why there are two case numbers assigned to this case by the circuit court or why two final orders were prepared.

[4] The crossed-out portions of the custody order included language to the effect that Father abandoned M.C., that "reunification of [M.C.] with his [F]ather is not viable at this time," and that "it is not in [M.C.]'s best interests to return to his native Honduras at this time." Thus, these findings on the SIJ factors were expressly *not* made by the circuit court in the custody order.

- 5 -

circuit court inserted language indicating that Father "has not been informed of the whereabouts of the minor child," and thus the circuit court "[could] make no finding" with respect to whether Father wishes to maintain a "close and continuing relationship with the child."

In the SIJ order, the circuit court found that it did "not have jurisdiction to make findings as to [SIJ] petitions[,] as such authority is not set forth in the Code of Virginia." The circuit court also found that M.C.'s reunification with Father "is not viable due to the fact that [M.C.] lives in Virginia," declining to conclude that abandonment prevented the reunification. The circuit court further found that "[M.C.] lived in Honduras with his grandmother [and F]ather would visit the home until [M.C.] left for the United States." Further, the circuit court found that "[M]other has not notified . . . [F]ather or his family of the location of [M.C.]" and that "the testimony as presented as [second] and [third] party hearsay is not sufficiently reliable to find that the Father has abandoned the child." Finally, the circuit court recorded "[f]urther findings" that "[M.C.] wanted to come to [the] U.S. because his Grandmother had other children to care for[,] so he wanted to live with Mother" and that "Father did attempt to gain custody/visitation [with M.C.] while in Honduras."

At the hearing, the circuit court stated that it declined to make the specific findings relating to the SIJ factors both because it lacked jurisdiction to do so and because, "[W]e're talking about essentially terminating someone's parental rights here when we go through these petitions, and I'm very reluctant to do that based on the type of evidence that you all are [presenting]." The circuit court further told counsel for Canales, "I've discussed with you many times, as soon as the General Assembly gives us the authority and the jurisdiction to hear these matters, I'd be happy to do so. I believe I'm restrained by the Code of Virginia with respect to these matters. So, I think this is the best I can do."

## II.  ANALYSIS

### A.  Preservation of Error

#### i.  Specificity of Objections

Father argues that Canales has not sufficiently preserved these issues for appeal, among other reasons, because she has not appealed the SIJ order and only endorsed the custody order as "Seen and objected to."  With respect to the specificity of her objections to the custody order, Canales asserts that the circuit court did not give her a chance to state with specificity her objections to its final ruling, therefore the "good cause" exception of Rule 5A:18 permits our consideration of her specific objections.  Furthermore, Canales contends that her assignments of error are nonetheless preserved for appeal because the issue was "narrow enough so that the basis for the objection [was] obvious."  Herring v. Herring, 33 Va. App. 281, 286, 532 S.E.2d 923, 927 (2000).

Rule 5A:18 states that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

> Ordinarily, endorsement of an order "[s]een and objected to" is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error.  Such an endorsement is sufficient to satisfy Rule 5A:18 only if "the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection."

Herring, 33 Va. App. at 286, 532 S.E.2d at 927 (quoting Mackie v. Hill, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993)).  Additionally, "[I]f a trial court is aware of a litigant's legal position

and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal." Brown v. Commonwealth, 279 Va. 210, 217, 688 S.E.2d 185, 189 (2010).[5]

In this case, Canales' only objection to the circuit court's orders came in the form of the phrase "Seen and objected to" written on the final orders. However, Canales was petitioning the court for only two things: custody of M.C. and SIJ findings of fact. Because the circuit court granted custody to Canales, there was only one issue left to which Canales could object: the circuit court's refusal to make the SIJ findings of fact. That refusal is apparent on both the SIJ order, where the circuit court specifically stated in the order that it did not have jurisdiction to make the requested SIJ findings of fact under Virginia law, as well as in the custody order, where the circuit court stated on the record that it believed it lacked the jurisdiction to do so and specifically declined to make the SIJ findings of fact by crossing out those portions of the custody order drafted by Canales that specifically found them to exist. Thus, by writing "Seen and objected to" on both orders, the only issue Canales could possibly be contesting is the circuit court's refusal to make the requested SIJ findings of fact. Canales' assignments of error on appeal are that the circuit court erred in finding it lacked jurisdiction to make SIJ findings *in the custody order* and therefore erred by declining to make such findings. Based on the record, we conclude that the circuit court's ruling was narrow enough to make Canales' objection obvious in this case. See Herring, 33 Va. App. at 286, 532 S.E.2d at 927. Further, because counsel for

---

[5] See also Code § 8.01-384(A):

> No party shall be deemed to have agreed to, or acquiesced in, any written order of a trial court so as to forfeit his right to contest such order on appeal except by express written agreement in his endorsement of the order. Arguments made at trial via written pleading, memorandum, recital of objections in a final order, oral argument reduced to transcript, or agreed written statements of facts shall, unless expressly withdrawn or waived, be deemed preserved therein for assertion on appeal.

Canales drafted the proposed orders, and the circuit court crossed out the portions relating to SIJ findings of fact, it is clear that the circuit court was aware of Canales' legal position, and Canales did nothing to waive her arguments. See Brown, 279 Va. at 217, 688 S.E.2d at 189; Code § 8.01-384(A). For these reasons, we conclude that the issues relating to the requested SIJ findings of fact are properly preserved and before us on appeal.[6]

ii. Potential Default of Jurisdictional Issue

Father emphasizes that Canales only noted an appeal of the custody order in Case No. CJ15-127, and did not note an appeal of the SIJ order in Case No. CJ15-128. Indeed, Canales concedes that point in her brief. Unlike the SIJ order, which has not been appealed, the custody order she now appeals does not specifically address Canales' first assignment of error regarding whether the circuit court had jurisdiction to make the SIJ findings. However, that does not end the analysis.

Although Canales only appealed the custody order, and not the SIJ order in which the circuit court specifically concluded it lacked jurisdiction to make SIJ findings of fact contained in that order, the circuit court also stated on the record that a lack of subject matter jurisdiction was a reason it crossed out some of the factual determinations in the custody order. In short, all the issues raised by Canales on appeal were both presented to the circuit court and effectively ruled upon by the circuit court in the custody order in Case No. CJ15-127. So, while the SIJ order is not directly before us, we conclude that we can nonetheless reach the merits of whether a

_____

[6] Moreover, the record reflects that the circuit court interrupted counsel for Canales when she tried to object with specificity and ordered Canales' counsel to "put 'seen and objected to,'" on the order, rather than allowing counsel to make specific objections on the record. This constitutes "good cause" under Rule 5A:18 such that this Court could review the assignments of error to "attain the ends of justice." Perry v. Commonwealth, 58 Va. App. 655, 667, 712 S.E.2d 765, 771 (2011) ("The Court may only invoke the 'good cause' exception where an appellant did not have the opportunity to object to a ruling in the trial court.").

JDR court, and a circuit court on appeal, has the jurisdiction and authority to make specific findings of fact on the SIJ factors of 8 U.S.C. § 1101(a)(27)(J)(i) in the context of the custody order appealed and the record that is actually before us.

## B. Standard of Review

"This Court reviews a trial court's statutory interpretation *de novo*, as a question of law." Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n, 289 Va. 34, 51, 768 S.E.2d 79, 87 (2014). Jurisdictional issues are also questions of law reviewed *de novo*. Harvey v. Flockhart, 65 Va. App. 131, 138, 775 S.E.2d 427, 430 (2015). Further, this Court "will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Commonwealth v. Anderson, 278 Va. 419, 425, 683 S.E.2d 536, 539 (2009) (quoting Commonwealth v. Jackson, 276 Va. 184, 192, 661 S.E.2d 810, 813-14 (2008)).

## C. Jurisdiction to Make SIJ Findings

In the context of this appeal, jurisdiction refers to the power of a court to entertain certain issues and render a decision. Determining whether a Virginia court has the power to decide particular cases or specific issues within those cases implicates both the Virginia Constitution and its statutes governing the operation of the judicial system. In this case, we must also consider the impact of 8 U.S.C. § 1101(a)(27)(J), if any, on that operation. As the Supreme Court of Virginia has noted,

> The general powers of the judiciary in Virginia are conferred by Article VI, Section 1 of the Constitution of Virginia. This section by itself confers jurisdiction upon the Supreme Court of Virginia in certain matters and further states: "Subject to the foregoing limitations, the General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." The concept of jurisdiction defines power. With regard to the Court of Appeals of Virginia, the Circuit Courts and the General District and Juvenile and Domestic Relations

> District Courts, the powers of such courts are entirely prescribed
> by statute.

Kelley v. Stamos, 285 Va. 68, 75, 737 S.E.2d 218, 221 (2013).

Addressing the merits of Canales' first assignment of error, the issue of whether the JDR courts, and circuit courts on appeal, have jurisdiction to make the SIJ findings of fact described in 8 U.S.C. § 1101(a)(27)(J) is one of first impression in Virginia's appellate courts.[7]

"The primary goal of the Court in interpreting statutes is to determine the [legislature's] intent. To do this, we examine the language contained in the statute itself, if unambiguous, and apply its plain meaning." Windsor Plaza Condo. Ass'n, 289 Va. at 51, 768 S.E.2d at 87.

### i. *The Authority of Virginia Courts to Entertain Independent SIJ Petitions*

Unlike a few of our sister states, the General Assembly has not enacted any statute specifically authorizing JDR or circuit courts to make the SIJ findings of fact described in 8 U.S.C. § 1101(a)(27)(J).[8] Nothing in Code § 16.1-241, the jurisdictional statute for the JDR courts, authorizes a JDR court to conduct a proceeding whose sole purpose is to render SIJ

---

[7] Although we review the decision of the circuit court, the ultimate issue is whether the JDR court had jurisdiction to make the SIJ findings because the circuit court's jurisdiction in this matter derives wholly from the JDR court. See Parrish v. Fannie Mae, 292 Va. 44, 49, 787 S.E.2d 116, 120 (2016) ("It is well-settled that when exercising its appellate jurisdiction in a *de novo* appeal, the circuit court's subject matter jurisdiction is derivative of the court not of record from which that appeal is taken. Therefore, when exercising its *de novo* appellate jurisdiction, the circuit court has no more subject matter jurisdiction than the general district court had in that court's original proceeding. Thus, the scope of the general district court's subject matter jurisdiction is the dispositive issue here.").

[8] For example, the State of Florida enacted Fla. Stat. Ann. § 39.5075(4), which states, "If the child may be eligible for special immigrant juvenile status, the department or community-based care provider shall petition the court for an order finding that the child meets the criteria for special immigrant juvenile status. The ruling of the court on this petition must include findings as to the express wishes of the child, if the child is able to express such wishes, and any other circumstances that would affect whether the best interests of the child would be served by applying for special immigrant juvenile status."

- 11 -

findings. In other states, some state appellate courts have held that their juvenile courts have a duty to make the SIJ findings described in the federal statute, despite the lack of any state law explicitly permitting or requiring them to do so.[9]

There is growing pressure upon federal and state courts alike to "discover" jurisdiction, where none was thought to exist, to allow judges to advance preferred public policy goals that have not been successfully achieved through action by the other branches of government. However, unelected judges make poor substitutes for legislators who are directly accountable to the citizens of the Commonwealth.

As noted above, the powers of the "Juvenile and Domestic Relations District Courts . . . are entirely prescribed by statute." Kelley, 285 Va. at 75, 737 S.E.2d at 221. Thus, although Article VI, Section 1 of the Virginia Constitution vests "[t]he judicial power of the Commonwealth" in the courts, setting the jurisdiction for those courts rests with the General Assembly.

Both Article 1, Section 5 and Article 3, Section 1 of the Constitution of Virginia expressly mandate the separation of power between the legislative, executive, and judicial departments of the Commonwealth.[10] The application of this principle prevents the courts of the

---

[9] See, e.g., Recinos, 473 Mass. at 737, 739 ("In its present form, the Federal statute requires a juvenile court to issue an order finding [on each of the SIJ factors]. . . . We conclude that the Probate and Family Court has jurisdiction, . . . [to make] the special findings necessary to apply for SIJ status pursuant to the I[mmigration and] N[ationality] A[ct]."); H.S.P. v. J.K., 223 N.J. 196, 200 (2015) ("Family Part courts faced with a request for an SIJ predicate order should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11."); In the Interest of J. J. X. C., 318 Ga. App. 420, 426 (2012) ("[T]he [juvenile] court had a duty to consider the SIJ factors and make findings.").

[10] The fact that the framers of the Virginia Constitution included two provisions in the Virginia Constitution commanding that no branch of government take actions properly belonging to another leaves no doubt as to the principle's importance as a bedrock pillar of our government. Indeed, the concept of separation of powers in Virginia government first appears as § 5 of the Virginia Declaration of Rights of 1776. It has continued in every Virginia Constitution since then. See Va. Const. of 1830 art. I, § 5 & art. II; Va. Const. of 1851 art. I, § 5 & art. II; Va.

Commonwealth from conveying jurisdiction upon themselves where the General Assembly has not done so. The General Assembly has not authorized the courts of the Commonwealth to hear petitions for SIJ findings as an independent matter, and thus, no such power exists.

## ii. *Effect of 8 U.S.C. § 1101(a)(27(J) on the Authority of Virginia Courts*

The above conclusion is entirely consistent with federal law. Nothing in the relevant federal statutory scheme can fairly be read as an attempt by Congress to convey jurisdiction to state courts to actively participate in immigration and naturalization decisions. 8 U.S.C. § 1101(a)(27)(J) is simply one of thirteen separate definitions of the term "special immigrant."[11] Indeed, 8 U.S.C. § 1101 is plainly labeled "Definitions" and it would strain basic principles of statutory construction to infer a grant of jurisdiction from the definition of a term of art.

The definition of a Special Immigrant Juvenile finds its origin in the Immigration and Nationality Act (the "INA"), which was first enacted in 1990 but has been amended multiple times since. Compare Pub. L. 101-649, § 153, 101st Cong., 2d Sess. (1990), with Pub. L. 105-119, § 113, 111 Stat. 2440 (1997), and Pub. L. 110-457, § 235(d)(1), 122 Stat. 5044 (2008); see also Recinos, 473 Mass. at 737; Matter of Marcelina M.-G. v. Israel S., 112 A.D.3d 100, 107-08 (N.Y. 2013).

As a preliminary matter, because the SIJ statute is within the definitions portion of Title 8, it is clear that 8 U.S.C. § 1101(a)(27)(J) only *defines* a special immigrant for the purpose of

---

Const. of 1864 art. I, § 5 & art. II; Va. Const. of 1870 art. I, § 7 & art. II; and Va. Const. of 1902 §§ 5 & 39." 2014 Va. AG LEXIS 1, *10 n.27; 2014 Va. AG LEXIS 5, *5 n.11; 2014 Va. AG LEXIS 17, *3 n.6. Succinctly put in less legalistic terms, our Constitution's framers have clearly underscored this constitutional imperative thereby reminding us that, when it comes to separating and limiting the power and authority of government, they really mean it!

[11] For example, among others, the definition of "special immigrant" also includes a former citizen who seeks to reacquire American citizenship, see 8 U.S.C. § 1101(a)(27)(B), or an immigrant who has served honorably in the armed forces of the United States, see 8 U.S.C. § 1101(a)(27)(K).

interpreting and enforcing the entirety of Title 8, and nothing more.  There is no language in any federal statute *mandating* that state juvenile courts make the SIJ findings.  Further, the SIJ statute does not request, much less order, state courts to make specific, separate SIJ findings; rather, it allows the appropriate *federal* entities to consider a state court's findings of fact, as recorded in a judgment order rendered under state law, when determining whether an immigrant meets the SIJ criteria.  In other words, the SIJ definition only lists certain factors which, *if* established in state court proceedings, permit a juvenile immigrant to petition the United States Citizenship and Immigration Services ("USCIS") of the Department of Homeland Security for SIJ status—8 U.S.C. § 1101(a)(27)(J) does not *require* that the state court make such findings or convey jurisdiction upon them to do so.

This conclusion is supported by the relevant federal agency's interpretation of the SIJ process.  The USCIS Policy Manual, the guidance document for application of the statutory scheme by the relevant federal officials, provides that "[t]here is nothing in the Immigration and Nationality Act (INA) that allows or directs juvenile courts to rely upon provisions of the INA or otherwise deviate from reliance upon state law and procedure in issuing state court orders."  6 U.S. Citizenship & Immigr. Servs., Dep't of Homeland Sec., Policy Manual pt. J, ch. 1(A), at n.1 (Jan. 5, 2017), https://www.uscis.gov/policymanual/HTML/PolicyManual-Volume6-PartJ-Chapter1.html#S-A [hereinafter USCIS Policy Manual].[12]  Further, "There is nothing in USCIS guidance that should be construed as instructing juvenile courts on how to apply their own state law," USCIS Policy Manual, ch. 2(D)(4), and the guidance document recognizes that state "[j]uvenile courts should follow their state laws on issues such as *when to exercise their*

---

[12] Both Canales and the Attorney General have cited the USCIS Policy Manual as pertinent authority in this case.

*authority*, evidentiary standards, and due process," <u>USCIS Policy Manual</u>, ch. 3(A)(2) (emphasis added).

The conclusion that the federal statutory scheme does not even attempt to impose an obligation on state courts to make SIJ findings independent of their normal processes also finds support in the USCIS requirement that the request for SIJ status be bona fide. In determining whether the request is bona fide for the purposes of awarding SIJ status,

> USCIS must review the juvenile court order to conclude that the request for SIJ classification is bona fide, which means that *the juvenile court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit. The court ordered dependency or custodial placement of the child is the relief being sought from the juvenile court.*

<u>USCIS Policy Manual</u>, ch. (2)(D)(5) (emphasis added) (footnote omitted).

Finally, USCIS guidance is that "[A] best interests determination generally involves the deliberation that courts undertake *under state law* when deciding what types of services, actions, and orders will best serve a child, as well as a deliberation regarding who is best suited to take care of a child." <u>USCIS Policy Manual,</u> ch. 2(D)(3) (emphasis added). In short, nothing in the federal statutory scheme mandates or requires that a state court take any action regarding SIJ findings. Although an SIJ applicant is required to provide federal officials with an order or orders from a state court in support of his or her eligibility for SIJ status, the statutory scheme and relevant federal guidance make clear that such orders should have been generated by state courts applying state law in the normal course of their responsibilities under the laws of the respective states.[13] Nothing in the INA directs a state court to do anything more than carry out its adjudicatory responsibilities under state law.

---

[13] Conversely, state courts have no power to award SIJ status to an applicant; that decision is reserved to federal officials applying federal as opposed to state law.

### iii. *SIJ Findings as an Ancillary Matter*

In apparent recognition of the foregoing, both Canales and the Attorney General conceded at oral argument that the statutory scheme does not create an independent cause of action in Virginia courts for those seeking SIJ status.[14] Rather, they argue that, in the course of exercising their jurisdiction granted by the General Assembly, Virginia courts can and, in fact, must make SIJ findings if such findings are requested and might confer a benefit upon a potential SIJ applicant.

Specifically, they argue that the General Assembly granted JDR courts (and hence circuit courts on appeal) jurisdiction to resolve custody disputes pursuant to Code § 16.1-241(A)(3)[15] and that the factors that Virginia courts routinely consider when resolving such disputes significantly overlap with the SIJ factors. They reason that, because Virginia courts will consider at least some SIJ factors in resolving normal custody disputes, Virginia courts have an obligation to make the specific SIJ findings to allow the child to obtain all potential benefits available to him or her, including permanent residency status.

To address this argument, we must analyze subsections (i) and (ii) of 8 U.S.C. § 1101(a)(27)(J)[16] and compare those subsections to the provisions of Virginia law that JDR courts routinely apply in the resolution of custody disputes.

---

[14] Although we are "not bound by concessions of law by the parties," Epps v. Commonwealth, 47 Va. App. 687, 703, 626 S.E.2d 912, 919 (2006) (*en banc*), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007), we appreciate the credible candor displayed by both Canales and the Attorney General.

[15] Although the issues in the case before us arise from a custody case brought pursuant to Code § 16.1-241(A)(3), the argument would apply with equal force to cases where the child "is alleged to be abused, neglected, in need of services, [or] in need of supervision" pursuant to Code § 16.1-241(A)(1) or "is [alleged to be] abandoned by his parent or other custodian" pursuant to Code § 16.1-241(A)(2).

[16] Subsection (iii) of the SIJ statute implicates neither state action nor the assignments of error in this case and thus, we need not consider it.

### a. Subsection (i) of the SIJ Statute

In the first subsection of the SIJ statute, Congress has expressly contemplated that a state court should apply *State law* regarding whether a child is "declared dependent" on a juvenile court and whether a child has been abandoned, abused, or neglected, such that "reunification with [one] or both . . . parents is not viable." 8 U.S.C. § 1101(a)(27)(J)(i). The requirement that such findings be made "under State law" was added in 2008 by the William Wilberforce Trafficking Victims Protection Reauthorization Act. Pub. L. 110-457, § 235(d)(1), 122 Stat. 5044 (2008).

Subsection (i) of the SIJ statute requires a finding that the immigrant child at issue is declared dependent on a state juvenile court or is appointed to the custody of another by a juvenile court. 8 U.S.C. § 1101(a)(27)(J)(i). This finding is inherent in many JDR court judgments applying the provisions of the Code of Virginia, as child custody is one of the primary determinations made daily by the JDR courts across the Commonwealth. See Code § 16.1-241(A)(3). Thus, once a JDR court has decided the issue of custody, it has also made a finding of fact that could potentially be used during SIJ proceedings to show that the immigrant child is dependent upon a state juvenile court or is appointed to the custody of another.[17]

---

[17] Noting that M.C. was in Canales' custody when the underlying action in this case was filed and remained in her custody at the conclusion of the proceedings below, Father urges this Court to hold that, for SIJ purposes, a child is only "declared dependent" on a juvenile court if there is an actual change in his or her custody. This is not a question to be resolved by Virginia courts; rather, the question of whether a custody determination leaving M.C. in the custody of Canales is sufficient to meet SIJ requirements is for federal immigration officials, and not Virginia courts, to make.

Subsection (i) also requires a showing by the SIJ applicant that "reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."  8 U.S.C. § 1101(a)(27)(J)(i).[18]

Whether a child has been subject to "abuse, neglect, [or] abandonment" so that reunification with his parent or parents is not viable, 8 U.S.C. § 1101(a)(27)(J)(i), may, and all too often does, arise in the course of a Virginia court's determination of child custody.  To the extent that such questions surface in Virginia custody proceedings, a Virginia court would turn to the best interests of the child factors found in Code § 20-124.3, which are used by JDR courts— and circuit courts on appeal—when making a decision regarding the custody of a child.  Factors the courts "shall consider" include:

> (3) The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the emotional, intellectual and physical needs of the child;
>
> (5) The role that each parent has played and will play in the future, in the upbringing and care of the child;
>
> (7) The relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child;
>
> (9) Any history of family abuse[19] as that term is defined in § 16.1-228; and

---

[18] Father contends that the "one or both . . . parents" phrase should be construed to mean that reunification with *both parents* is not viable—in other words, that neither parent can take or retain custody of the child, and therefore, the SIJ statute does not apply to M.C., who remains in the custody of Canales.  Once again, this misconstrues the role of Virginia courts in the statutory scheme.  A Virginia court applying the laws of the Commonwealth hears evidence and then decides who should be awarded custody based upon the evidence presented regarding the circumstances of the parents and the best interests of the child.  Whether the Virginia court's determination in this regard is sufficient to satisfy the SIJ criteria is a question reserved for federal immigration officials.

[19] "'Family abuse' means any act involving violence, force, or threat that results in bodily injury or places one in reasonable apprehension of death, sexual assault, or bodily injury and that

(10) Such other factors as the court deems necessary and proper to the determination.

Code § 20-124.3(3), (5), (7), (9), (10).

The above best interests factors are the closest Virginia analogs to the SIJ findings of fact specified by Congress. Although the language in the SIJ statute and Code § 20-124.3 is not identical, the factors are comparable, and again, by its express terms, 8 U.S.C. § 1101(a)(27)(J)(i) contemplates that state courts apply state law and render judgments accordingly. The statute clearly leaves to federal officials the ultimate determination whether that judgment regarding the child's best interests aligns with SIJ requirements. It is certainly conceivable that a JDR court judgment rendering factual findings pursuant to the best interests considerations of Code § 20-124.3 could be found to satisfy 8 U.S.C. § 1101(a)(27)(J)(i), but that determination must be made by federal authorities, not state judges.

Similarly, a judgment rendered pursuant to Code § 20-124.3(5) regarding "[t]he role that each parent has played and will play in the future, in the upbringing and care of the child," could, depending on the underlying facts found by the court in support of its judgment, certainly be considered by federal authorities to satisfy a finding that one (or both) parents has engaged in abuse, neglect, or abandonment under Virginia law, thereby also satisfying the relevant portion of the SIJ statute. Also, Code § 20-124.3(9), regarding any history of *family* abuse,[20] explicitly requires a finding on the issue of abuse when appropriate. Finally, Code § 20-124.3(10), which allows a JDR court to consider any other factors the court deems necessary, allows a court to consider the grand scheme of the child's circumstances. Again, depending upon the facts found

---

is committed by a person *against such person's family or household member*." Code § 16.1-228 (emphasis added).

[20] The Virginia statutory language considers *any family abuse*—not just abuse of the child—as grounds for a finding of abuse for the purposes of the best interests of the child.

by the court to support its judgment under state law, this could arguably also support a determination by federal authorities regarding "abuse, neglect, abandonment, or a similar basis."

Thus, we agree with Canales and the Attorney General that there may be circumstances when a Virginia court, by rendering a custody determination in the normal course, will deliver a judgment and resulting order that may satisfy the SIJ requirements. So long as a Virginia court's judgment and subsequent order are the product of a proceeding that was authorized by the General Assembly to conduct and result from the court's application of Virginia law in the normal course, the Virginia court has not exceeded its authority as granted by the General Assembly.

We disagree, however, with the assertion of both Canales and the Attorney General that Virginia courts are *required* to make such findings or tailor their orders to increase the likelihood that federal immigration officials will find them acceptable. Virginia courts are obligated to resolve the disputes before them and enter judgments consistent with the law of the Commonwealth.[21] This requires a Virginia court to apply Virginia law in the same manner it does in every other custody case that does not involve a juvenile immigrant. Whether the resulting order will assist the juvenile immigrant to achieve SIJ status is not an inquiry to be resolved by the courts of the Commonwealth; the power to make such a determination resides exclusively with the relevant federal officials.

---

[21] There are many reasons that a court, while having the ability to address specific issues, might decline to do so. For example, Virginia courts "strive to decide cases on the 'best and narrowest grounds available,'" Alexandria Redevelopment & Hous. Auth. v. Walker, 290 Va. 150, 156, 772 S.E.2d 297, 300 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010)), leaving unanswered questions that the litigants have raised that are unnecessary to resolve the matter before the court.

### b. Subsection (ii) of the SIJ Statute

Subsection (ii) of the SIJ statute states that a special immigrant is, in part, someone "for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence." 8 U.S.C. § 1101(a)(27)(J)(ii). Canales and some of the *amici* argue that this subsection is part of the SIJ findings of fact and therefore is a determination made by state courts. Once again, however, a Virginia court has no authority to answer this specific question.

We reject the premise for this argument for several reasons. As noted above, the federal statute does not direct state courts or officials to take any particular actions, but rather, counsels state courts to simply follow their normal procedures interpreting state law and leave federal officials with the decision as to whether the end product is sufficient to meet the federal statutory criteria. We recognize that a Virginia court focused solely on the dispute properly before it, may render a judgment that federal officials deem insufficient to meet the SIJ requirements, leaving the applicant ineligible for SIJ status. Although some may characterize such a result as unfortunate, harsh, or simply flawed, the flaw, if any, lies with the federal statute.

In fact, as noted above, both the SIJ statute and the federal guidance regarding it make clear that state courts should focus on the state court issues before them, and not on the immigration consequences that may result. The USCIS specifically notes that an SIJ request may not be deemed bona fide if "the juvenile court order was sought . . . primarily or solely to obtain an immigration benefit." USCIS Policy Manual, ch. (2)(D)(5). Further, the USCIS instructs federal officials, who are charged with reviewing state court orders, that qualifying state court orders "should use language establishing that the specific findings (conclusions of law) were made under *state* law. *The order (or orders) should not just mirror or cite to immigration*

*law and regulations*." <u>USCIS Policy Manual</u>, ch. (3)(A) (emphasis added). Ultimately, the SIJ statute directs federal officials to review state court orders, produced in the normal course of state court proceedings, to determine whether those orders satisfy the federal criteria. It does not add to or alter the responsibilities of Virginia courts in adjudicating custody or other matters.[22]

Therefore, we hold that the jurisdiction and authority of a JDR or circuit court regarding a juvenile immigrant seeking SIJ status is only that jurisdiction and authority to render judgments as granted to the courts by the General Assembly. Whether such a judgment and supporting factual findings satisfy the definition of a special immigrant as contemplated by 8 U.S.C. § 1101(a)(27)(J) is solely a matter for determination by officials of the Department of Homeland Security.

_____

[22] Taken in context, the phrase "administrative or judicial proceedings" in subsection (ii) of the SIJ statute would seem to refer to federal administrative or judicial proceedings for several reasons. First, because the SIJ statute is a federal law, any language that does not explicitly indicate that proceedings are to be adjudicated in a state forum should presumptively refer to federal proceedings. Before the enactment of the SIJ statute in 1990, the Senate Committee on the Judiciary submitted a Report detailing the nature of the entire INA. That Report sheds light specifically on subsection (ii) of the SIJ statute because it discusses "administrative and judicial proceedings" generally in the context of naturalization. The Report states, "Under current law, naturalization is awarded only in judicial proceedings. . . . The committee bill permits naturalization to be conducted under administrative, rather than judicial, process as a way of relieving courts of the naturalization burden. The committee bill makes no changes to the naturalization requirements." 1 Igor I. Kavass, Bernard D. Reams, Jr., The Immigration Act of 1990: A Legislative History of Pub. L. No. 101-649 1 (1997); Immigration Act of 1989; S. Rept. 101-55 on S. 358 (June 19, 1989) at 3 [hereinafter 1989 S. Rept.]. The Report also notes that the INA is meant to permit those "with naturalization petitions already filed to chose [sic] between judicial and administrative naturalization." 1989 S. Rept. at 5. Further evidence that the phrase refers to federal judicial and administrative proceedings is evidenced by 8 U.S.C. § 1446, where the administrative and judicial proceedings referenced expressly refer to immigration officers and United States District Courts, respectively.

In any event, it is clear that the only "best interests" analysis involving a state court is the one it would undertake through the application of state law pursuant to subsection (i) of the SIJ statute and whether or not the determination made by a state court satisfies subsection (ii) is beyond our purview; that question is reserved for the federal officials charged with the administration of the SIJ program.

We now apply our holding above to Canales' second assignment of error that the circuit court "erred in declining to rule that [M.C.]'s Father had abandoned [M.C.], that reunification with [M.C.]'s Father was not viable, and that it was not in [M.C.]'s best interests to return to Honduras."

In Canales' case, the circuit court did consider and make findings on the best interest factors contained in Code § 20-124.3 pursuant to state law, and granted her request for sole custody of M.C. after doing so. In support of its judgment awarding sole custody of M.C. to Canales, the circuit court made specific findings of fact that Father "has not maintained a relationship with [M.C.] nor had positive involvement with the child's life" and that the Father "has played no role in the upbringing and care of the minor child throughout his life, and there is no indication that [Father] intends to play a role in [M.C.]'s upbringing and care in the future."

As we have already noted, it is the proper role of federal authorities, not state courts, to determine whether state court judgments are sufficient to satisfy SIJ criteria. Nevertheless, Canales argues that the evidence submitted to the circuit court in this case satisfied each of the necessary best interests factors that would satisfy SIJ status, but that the circuit court erred in crossing out the findings that had the specific SIJ statutory language. For instance, although the circuit court found that Father had neither maintained a relationship with M.C. nor had positive involvement in M.C.'s life, pursuant to Code § 20-124.3(3), the circuit court crossed out the next sentence regarding a finding of abandonment under Virginia law, as would be required for an SIJ finding. The circuit court also crossed-out phrases regarding whether reunification of M.C. with Father is viable and whether it is in M.C.'s best interests to return to his home country. Canales argues that the SIJ determinations as to whether M.C. should be returned to his native country and whether reunification with Father is viable due to abandonment are "necessary and proper"

to the custody decision made below, and thus, the circuit court erred in failing to make those findings. Canales asserts that the circuit court simply refused to make such determinations, however, that is clearly not the case. Rather, the circuit court specifically held that the testimony given at the hearing was insufficiently credible to support a finding of abandonment.

In the SIJ order, which is not appealed here, the circuit court held that much of the testimony was hearsay and was "not sufficiently reliable to find that the Father has abandoned the child." Because Canales did not appeal the SIJ order, those factual findings are binding on appeal and this Court cannot make a holding that would conflict with those findings. Maine v. Adams, 277 Va. 230, 242, 672 S.E.2d 862, 869 (2009). Although Canales assigns error to the crossing-out of SIJ findings in the custody order, this Court cannot re-weigh the evidence or alter the circuit court's credibility determinations. Wright v. Wright, 61 Va. App. 432, 460, 737 S.E.2d 519, 533 (2013) ("[W]e will not disturb the trial court's credibility determinations."). The determination by a fact-finder in a trial court that a party has failed to sustain its burden of proof or persuasion is not subject to appellate review. See Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) ("In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."). Therefore, we find no error in the circuit court's factual conclusion that Canales' evidence was largely based upon unreliable hearsay and therefore that the evidence was insufficient to support a finding of abandonment of M.C by Father. [23]

---

[23] Additionally, we note that Canales candidly conceded that, as the moving party, she bore the burden of proof regarding any requested findings. As such, the failure of Father to appear or put on evidence to counter the evidence offered by Canales was not dispositive if the circuit court was not convinced by the evidence offered by Canales. SunTrust Bank v. PS Bus. Parks, L.P., 292 Va. 644, 652, 791 S.E.2d 571, 575 (2016) ("The phrase 'burden of proof' refers to two related but distinct concepts: (1) The 'burden of production,' which is the obligation to

## III. CONCLUSION

For the foregoing reasons, we hold that the circuit court did not err when it found that it lacked jurisdiction to make separate SIJ findings of fact. The Code of Virginia does not provide such authority and 8 U.S.C. § 1101(a)(27)(J) does not in any way alter the jurisdiction of Virginia courts. Rather, it simply allows immigrant juveniles to use certain state court judgments and supporting factual findings—such as those made under the best interests analysis of Code § 20-124.3—to support a petition for SIJ status with the Department of Homeland Security. Federal authorities then determine whether the state court findings are sufficient to meet the requirements of the SIJ statute. Further, the circuit court did not err when it crossed out the specific SIJ findings in the custody order, both because the circuit court was permitted to apply only the provisions of the Code of Virginia to the custody determination and because the unappealed factual finding that there was insufficient evidence to prove Father's abandonment is binding on this Court in this appeal. Accordingly, we affirm the judgment of the circuit court.

<u>Affirmed.</u>

---

come forward with evidence to make a *prima facie* case . . ., and (2) the 'burden of persuasion,' *which is the obligation to introduce evidence that actually persuades the fact finder to the requisite degree of belief that a particular proposition of fact is true*." (quoting Charles E. Friend & Kent Sinclair, <u>The Law of Evidence in Virginia</u> § 5-1[a], at 298 (7th ed. 2012)) (emphasis added).