COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Decker, Judges Malveaux and Ortiz

CHEYENNE LEIGH GILLASPY

v.       Record No. 0320-21-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 5, 2021

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

(Stephen R. Sofinski, on brief), for appellant. Appellant submitting
on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Lynn
Svonavec, Guardian *ad litem* for the minor child, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.

Cheyenne Gillaspy (mother) appeals the circuit court's order terminating her parental rights.

Mother argues that the circuit court erred in finding that the evidence was sufficient to support a

termination of her parental rights under Code § 16.1-283(C). Specifically, mother maintains that

she remedied the conditions that led to her child being placed in foster care, and in the

alternative, that good cause existed for any perceived failure to do so. Upon reviewing the

record and briefs of the parties, we conclude that the circuit court did not err. Accordingly, we

affirm the decision of the circuit court.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother and Brent Smallwood (father) are the biological parents to the child who is the subject of this appeal. Father is currently serving a life sentence and was incarcerated for the entirety of these proceedings.[2] Mother has a long history of substance abuse.[3] At the child's birth in March of 2018, mother and the child were referred to a home visiting program providing family-strengthening services due to mother's diagnosis of bipolar disorder, amphetamine and psychostimulant induced psychosis with hallucinations, and posttraumatic stress disorder (PTSD).

On March 5, 2019, Harrisonburg Rockingham Social Services District (HRSSD) received a report of a physical altercation at mother's home and that mother had been seen smoking methamphetamine with the child in the home. Mother reported to law enforcement officers that Christina Price (child's maternal grandmother) struck her twice and that maternal grandmother had a history of harassing and threatening mother. The child also had a "significant burn on his arm which [m]other reported was from him pulling the cord of the curling iron, causing the curling iron

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Father was sentenced on April 7, 2020 for first-degree murder.

[3] Mother's past drug use includes "meth, cannabinoids, ecstasy, and heroin."

- 2 -

to fall on his arm and burn him." The child tested positive for methamphetamine exposure two days later. Mother tested negative for methamphetamine but did report that she had pending drug charges.

A family custody hearing occurred on April 24, 2019, during which the guardian *ad litem* expressed concern for the child's well-being and requested that he be placed in foster care. At the time of the hearing, mother was unemployed and did not have a stable place to live. The Harrisonburg/Rockingham Juvenile and Domestic Relations District Court (the JDR court) awarded custody of the child to HRSSD, finding that it was contrary to the child's welfare to continue in mother's custody and that reasonable efforts were made to prevent removal. No relatives were identified as being suitable to take the child. The JDR court entered a dispositional order placing the child in a foster care plan with the goal of returning home.

HRSSD recommended and provided numerous services for mother, including allowing mother weekly visitations with the child as deemed appropriate by HRSSD, individual/group counseling services, substance abuse evaluations and treatment, an assigned case worker, and an assigned parent mentor to assist with mother's employment, transportation, and housing needs. HRSSD directed mother to comply with all service recommendations, including random drug screenings.

Mother made little progress towards the goal of the child returning home. She failed to attend counseling sessions regularly and did not comply with HRSSD's substance abuse services. She also struggled to maintain steady employment and transportation. Mother tested positive for methamphetamine on September 16, 2019 and October 22, 2019. The JDR court subsequently entered a foster care review order amending the foster care plan with a goal of relative placement.

Mother's drug problems continued. On November 8, 2019, she advised the foster care specialist that she had used drugs two days earlier. Mother then agreed to check into First Step

Women's Shelter, a domestic violence shelter, as recommended by her parent mentor. Mother was evicted from the shelter a couple of weeks later. Mother then moved back into the home of maternal grandmother, despite recommendations from HRSSD that she not reside with maternal grandmother due to their toxic relationship. In January 2020, mother tested positive for amphetamine and cannabis. Mother's psychiatrist also noted in January of 2020 that mother's "psychiatric problems result in high risk of imminent harm to self/others and inability to care for self."

Maternal grandmother had been involved over the life of this matter as a possible placement option and had filed a petition for custody of the child. However, maternal grandmother was found ineligible initially due to her husband's extensive criminal history, which included assault and battery. HRSSD instructed maternal grandmother that in order to be considered a placement option, her husband could not live in the house or be married to her anymore. Maternal grandmother advised that she was no longer living with her husband on a consistent basis but that they remained married. HRSSD also instructed maternal grandmother to attend foster parent classes. Maternal grandmother attended some, but not all of the classes, and was often argumentative or slept during the classes she did attend. In addition, maternal grandmother struggled with substance abuse; she tested positive for amphetamine and methamphetamines in January 2019 and methamphetamines in February 2020. Maternal grandmother also has a history of driving under the influence in 2011 and 2015.

On January 15, 2020, law enforcement responded to an incident at maternal grandmother's residence because of a reported domestic dispute between mother and maternal grandmother. Mother reported that maternal grandmother "pushed [mother] out the door and locked [her] out" and that maternal grandmother had threatened to take the child and "get a protective order against [mother]." Mother was immediately taken to the hospital for a psychiatric hospitalization because

of suicidal thoughts. While at the hospital, mother tested positive for amphetamine and marijuana. Mother remained hospitalized for three days.

Mother tested positive for methamphetamine and marijuana metabolite in September of 2020. On October 11, 2020, law enforcement responded to another incident at maternal grandmother's residence where mother reportedly "brandished a knife at [maternal grandmother] and was stabbing the walls in the house." Emergency dispatch could hear a female screaming "I'm going to kill you!" in the background. Upon arrival, law enforcement confronted mother in her vehicle at the end of the driveway. Mother appeared to be under the influence, refused to obey law enforcement's requests to show her hands, and "yelled at [the officer] to shoot her while she was walking towards [him]." Mother was taken into custody and charged with domestic assault, property damage, public intoxication, and attempted malicious wounding. Mother remained incarcerated due to these charges for the remainder of these proceedings.

The JDR court entered a subsequent permanency planning order, approving a permanent goal of adoption, and a termination of parental rights order, finding that termination was in the best interest of the child. The JDR court also found that maternal grandmother did not meet the statutory criteria set forth in Code § 16.1-282.1 for relative placement.

Mother appealed to the circuit court the JDR court's orders approving the goal of adoption and involuntarily terminating her parental rights pursuant to Code § 16.1-283(C)(2). Maternal grandmother also appealed the JDR court's denial of her petition for custody of the child.

On March 9, 2021, the parties appeared before the circuit court. HRSSD presented evidence that, while the COVID-19 pandemic had hindered mother's ability to timely participate in the services offered by HRSSD, "there was never really any stability throughout the life of the case as it is" and that mother "wasn't invested" even before the pandemic began. HRSSD emphasized that the child had been exposed to methamphetamines and drug use and was a witness to violence while

being in the care of mother and maternal grandmother. Therefore, HRSSD did not support child's placement with mother or maternal grandmother. Mother confirmed that she had used methamphetamine with maternal grandmother when they lived together while the child was in foster care. Mother testified that "anytime [she] spent around [maternal grandmother] has been very stressful, very toxic."

HRSSD found that no other relatives were eligible to be a potential placement for the child. HRSSD had examined maternal great grandmother as a possible placement but determined that she was not an option because of various health concerns and her close connection with maternal grandmother. Maternal grandfather believed it to be in the best interest of the child to stay with his foster parents.

HRSSD presented evidence that the child had been with his current foster family for over eight months. According to the foster mother, the child "fits right in" with the foster family and regularly attends speech therapy. The foster mother testified that the family would like to adopt child. Mother stated that "I hope and I believe [the child] is" happy with the foster family.

After hearing the evidence and arguments, the circuit court denied maternal grandmother's custody petition, found that HRSSD exercised "good effort and sufficient effort to attempt to find an appropriate relative placement for this child without success," approved the goal of adoption, and terminated mother's parental rights under Code § 16.1-283(C)(2). Mother's appeal followed.[4]

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dept't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting

---

[4] Maternal grandmother also appealed the circuit court's ruling; the Court dismissed her appeal. See Price v. Harrisonburg Rockingham Soc. Servs. Dist., No. 0615-21-3.

Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the circuit court's termination of her parental rights and contends that "she remedied the conditions that led to the children [sic] going into foster care, and if not, that she had good cause for any perceived failure to do so." Specifically, mother argues that her efforts to remedy the conditions were shut down by her incarceration stemming from the charges maternal grandmother pressed against her. Mother contends that maternal grandmother "sabotaged" her at every chance she had and that her "punishment for alleged criminal matters should not be enhanced by terminating her rights to her child."

HRSSD argues that mother did not preserve her arguments for appeal. However, in her closing argument to the circuit court, mother argued against the termination of her parental rights. She further alleged that maternal grandmother had "interfered" with her efforts to remedy the conditions that required the child's placement in foster care. "This Court has held that '[c]ounsel may meet the mandates of Rule 5A:18 in many ways. For instance, counsel may make clear the ground for [her] objection in a motion to strike the evidence or in closing argument.'" Moncrief v. Div. of Child Support Enf't ex rel. Joyner, 60 Va. App. 721, 729 (2012) (quoting Lee v. Lee, 12 Va. App. 512, 515 (1991)). Furthermore, if "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal.'" Canales v. Torres Orellana, 67 Va. App. 759, 771 (2017) (*en banc*) (quoting Brown v. Commonwealth, 279 Va. 210, 217 (2010)). Accordingly, we find that mother preserved her arguments for appeal.

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which provides that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

After hearing the evidence and argument, the circuit court found, by clear and convincing evidence, that mother, without good cause, was unwilling or unable to remedy the conditions that led to the child's placement into foster care, notwithstanding the reasonable and appropriate efforts of HRSSD, for a period exceeding twelve months from the child's placement into foster care. The circuit court noted that the child previously had tested positive for methamphetamine while under mother's care and mother had several positive tests following removal, most recently in September 2020. The circuit court also pointed to the incident when mother was screaming for a law enforcement officer to shoot her as evidence that mother continued to struggle with "severe" mental health issues in a "chaotic" environment.

The circuit court found that HRSSD provided mother with adequate services, including mentoring services, mental health and substance abuse treatment opportunities, counseling, and mentoring to assist with transportation following the child's removal. However, despite those services, which mother does not argue were inadequate, the circuit court found that mother failed

to show progress, declined inpatient treatment, and failed to show that she had remedied the conditions leading to the child's foster care placement.

Mother attempts to argue that she planned to continue to work upon her release from prison and that, had she been "at liberty, she would have had the opportunity to stabilize her life further and be a placement for her child . . . ." At the time of the circuit court hearing, the child had been with his current foster family for over eight months. Mother was incarcerated and not in a position to care for the child. The circuit court found that the child's best interests were being served in the foster care home, where he was "thriving" in a "stable, nurturing" environment. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).

Contrary to mother's arguments, clear and convincing evidence supported the circuit court's rulings. The circuit court did not err in finding that it was in the child's best interests to terminate mother's parental rights and that the evidence was sufficient to support termination under Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.