COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, AtLee and Senior Judge Haley

UNPUBLISHED

ASHLEY NICOLE WITCHER

v.      Record No. 0244-20-1

CITY OF NEWPORT NEWS
 DEPARTMENT OF HUMAN SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 6, 2020

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Gary A. Mills, Judge

(Charles E. Haden, on brief), for appellant.

(Pamela P. Bates, Senior Assistant City Attorney; Rebecca C.
Lawrence, Guardian *ad litem* for the minor children; Krinick, Segall,
Moore & Lawrence, on brief), for appellee.

Ashley Nicole Witcher (mother) appeals the circuit court's orders terminating her parental

rights to two of her children, A. and T. Mother argues that the circuit court erred by terminating her

parental rights under Code § 16.1-283(C)(1), (C)(2), and (E)(i) and finding that termination was in

the best interests of the children. Upon reviewing the record and briefs of the parties, we conclude

that this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit

court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to five children, two of whom, A. and T., are the subject of this appeal.[2] In September 2017, mother was living with her sister, Brittany Hubbard, her nephew, her eight-year-old son (I.), her five-year-old daughter (B.), her two-year-old daughter (A.), and one-year-old daughter (T.). The City of Newport News Department of Human Services (the Department) first became involved with the family on September 30, 2017, when mother's five-year-old daughter, B., was hospitalized for burns.[3] On October 10, 2017, mother visited B. in the hospital and left I., A., and T. in her sister's care. Mother's sister had "some delays," and mother was "sort of her caregiver." On that same day, child protective services received a report that one-year-old T. was walking in the street by herself. The Department performed a home study and discovered that there was broken glass from the windows, improperly working toilets, and "lots of clutter and clothes every where [sic]." The Department entered into a safety plan

_____

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] Joe Witcher is A. and T.'s biological father. The circuit court terminated father's parental rights to A. and T. He did not appeal the circuit court's orders. Mother voluntarily terminated her parental rights to her oldest child, who was adopted in 2009.

[3] Mother reported that B. was wearing a "really ruffled dress" and "was reaching across the stove," while mother was cooking breakfast. B.'s dress caught on fire, and B. "ended up getting burned."

with mother, and the children lived temporarily with family friends. On October 23, 2017, the family friends contacted the Department and stated that they were no longer able to care for the children because mother's behavior was "too much" and "very disruptive." The Department removed mother's children and nephew from the home and placed them in foster care.[4]

The Department met with mother to review the foster care requirements with her, including providing a safe home and supervision for the children. Mother worked with her landlord to resolve the plumbing problems and repair the windows. The Department referred mother to parenting classes and recommended a parenting coach. The Department also was concerned about mother's mental health because mother's emotions could "take over" and she would be unable "to be calm enough to be a part of any type of planning for the children or be able to make decisions that [were] in the children's best interest." Mother had been receiving medication management services and participating in individual counseling before the children entered foster care. The Department asked that she take a mental health assessment, which she did, and she continued with her individual counseling until she moved out of the area.

The Department initially offered mother supervised visits at the agency, but once mother's home was "deemed safe," the Department approved supervised visits in the home. Mother then progressed to unsupervised visits in the home, and she had overnight visits with her older child, I. Then, in March 2018, B. alleged that mother was abusing her. As a result of the allegations and pending investigation, the Newport News Juvenile and Domestic Relations District Court (the JDR court) ordered that mother was not allowed to have any contact with B., and mother's visits with the other children were moved to the agency. Mother was "very angry," "uncooperative," and had "a lot" of outbursts, which negatively affected her visitations. Child protective services determined that the allegations were unfounded. However, by May 2018,

---

[4] Mother's child, B., remained hospitalized.

mother's financial situation had deteriorated, and she was evicted from her home. In June 2018, mother moved to the Henry-Martinsville area, and the Department was limited as to the services it was able to provide.

In September 2018, the Department placed mother's older children, I. and B., with their maternal grandmother, who was unable to care for A. and T. also. The Department had explored other relatives as possible placements for A. and T., but none were viable placements.

Mother secured a two-bedroom apartment in Henry County, so the Department arranged for the children to visit with her twice in her home. While the first visit went well, the second visit did not go well because mother did not have food for the children to eat and mother had other visitors. The Department found that mother's home "had some safety concerns," including needing a smoke detector. The Department attempted to schedule a third visit, but was unsuccessful; therefore, mother's last in-person visit with A. and T. was November 8, 2018. Mother did not ask the Department for additional in-person visits.

The Department also arranged for telephone visitation with the children, but the Department had to stop the telephone visits because mother was "inconsistent and it was affecting the children." Between November 7, 2018 and March 3, 2019, mother spoke with the children three times, and she missed seventeen other attempted calls. Mother last spoke with the children on February 3, 2019.

The Department requested a home study with Henry-Martinsville Social Services, but "[t]hey were not successful in providing [the Department] with a home study" because mother was "noncompliant." Despite several requests from the Department, mother never provided the social worker with a copy of her lease.

Mother ultimately completed a parental capacity evaluation. After receiving the evaluation, the Department recommended that mother start individual therapy and medication

management again, which mother had stopped after she moved out of the Newport News area. While in the Henry-Martinsville area, mother attended one counseling session and missed two other appointments before Piedmont Community Services closed her account.

The Department changed its foster care goal to adoption because the children had been in foster care for more than twelve months, and mother had not complied with the home study, had not provided a copy of her lease or verification of a full month's rental payment, and had not complied with mental health treatment. The Department also had been unable to establish parent coaching with mother. The JDR court approved the foster care goal of adoption for I., B., A., and T. On August 6, 2019, the JDR court involuntarily terminated mother's parental rights to I. and B., and mother did not appeal this ruling.[5] On September 3, 2019, the JDR court conducted a hearing regarding the termination of mother's parental rights to A. and T. Mother was not present at that hearing, and the JDR court terminated mother's parental rights to A. and T. Mother timely appealed the JDR court's orders regarding A. and T. to the circuit court.

After the JDR court's termination hearing, the Department sent mother a letter acknowledging her appeal and requesting "a current lease, verification of payment of rent and utilities for the past three to six months, verification of employment, verification of current income, consent form, [and] verification of any other services that [she was] receiving." Beginning in August 2019, mother started working for Door Dash, and then in November 2019, mother found full-time employment as a personal care aide with a medical staffing company. Mother did not provide the Department with paystubs until November 2019. With respect to her counseling, mother previously had told the Department that she was working with a "life coach," who was providing her with "pro bono mental health mentoring services." Despite several requests from the Department for the counselor's contact information, mother did not provide the

---

[5] Thereafter, the maternal grandmother petitioned to adopt I. and B.

contact information when it was requested, waiting until the week before the circuit court hearing to finally provide it.

On February 7, 2020, the parties appeared before the circuit court. The Department explained that although mother had provided some requested documentation, she was "just at the beginning of starting services again," and the children already had been in foster care for more than two years. The Department knew that mother had moved since it visited her home in October 2018, but the social worker had not visited her new residence.

The Department had placed A., T., and their cousin together with the same foster family. The Department presented evidence that when A. entered foster care, she had "pretty extreme tantrums," but over time the tantrums "decreased significantly." The Department reported that both A. and T. were "developing completely on task, if not advanced. Both [were] very smart little girls."

Amanda Estep, a licensed professional counselor in Martinsville, testified that she had been working with mother since October 2018. Estep had not contacted the Department or reviewed the parental capacity evaluation. Estep explained that she had provided mother with "pro bono mental health mentoring, some skill training," and they had worked on "self-advocacy" and "symptom management." Estep clarified that she had not provided mother with mental health therapy, but "an informal sort of service." Estep acknowledged that mother would benefit from seeing an outpatient therapist certified in trauma, which Estep is not. Estep testified that mother had been compliant with her recent prescriptions for depression and anxiety. Estep also had visited mother's current two-bedroom apartment, which she described as clean and tidy and in a "very safe area." Estep believed that mother had a "whole family support system," including her mother, her aunt, and cousins, in Martinsville, whereas she did not have that support in Newport News.

Mother acknowledged that "there were gaps where [she] just fell off," that she was not "perfect," and that she "didn't know how to get it all together." She became depressed after watching B. get burned, losing custody of her children, and separating from A. and T.'s father. Mother acknowledged that she needed therapeutic services, but she believed that she needed them to cope with the Department removing her children from her custody. Mother admitted that she was aware of the services that she needed to complete for the Department.

Mother testified that she had lived in her apartment since May 15, 2019, and she provided the circuit court with a letter from her landlord. She claimed to have lost her lease, and her landlord was unable to give her a copy of it.

Mother further offered that she had missed many of the telephone calls with her children because she did not have a phone and had to use a neighbor's phone. She suggested that the foster parent did not call at the designated time. Mother apologized for taking "this much time to get it together," but emphasized that she wanted custody of A. and T.

After hearing the evidence and arguments, the circuit court terminated mother's parental rights under Code § 16.1-283(C)(1), (C)(2), and (E)(i). On February 7, 2020, the circuit court entered the orders memorializing its rulings. This appeal followed.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty.

Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

The Department argues that mother did not preserve her arguments for appeal; however, in her closing argument to the circuit court, mother argued that "these children shouldn't be removed and should be placed back with her . . . ." Mother's counsel endorsed the final orders terminating her parental rights to A. and T. as "Seen and objected." "Ordinarily, endorsement of an order '[s]een and objected to' is not specific enough to meet the requirements of Rule 5A:18 because it does not sufficiently alert the trial court to the claimed error." Canales v. Torres Orellana, 67 Va. App. 759, 771 (2017) (*en banc*) (quoting Herring v. Herring, 33 Va. App. 281, 286 (2000)). "Such an endorsement is sufficient to satisfy Rule 5A:18 only if 'the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection.'" Id. (quoting Herring, 33 Va. App. at 286). Furthermore, if "a trial court is aware of a litigant's legal position and the litigant did not expressly waive such arguments, the arguments remain preserved for appeal.'" Id. (quoting Brown v. Commonwealth, 279 Va. 210, 217 (2010)). Assuming without deciding that mother preserved her argument for appeal, we find that the circuit court did not err in terminating her parental rights to A. and T.

A parent's parental rights may be terminated "if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that (i) the residual parental rights of the parent regarding a sibling of the child have previously been involuntarily terminated . . . ." Code § 16.1-283(E)(i). Here, the Department presented evidence that mother's parental rights to I. and B. were terminated involuntarily on August 6, 2019. Mother did not appeal the JDR court's rulings regarding I. and B.; therefore, the orders were final and available for the circuit court to consider.

Moreover, the circuit court found that termination of mother's parental rights to A. and T. was in their best interests. "'[T]here is no simple, mechanical, cut and dried way' to apply the best interests of the child standard." Bristol Dep't of Soc. Servs. v. Welch, 64 Va. App. 34, 48 (2014) (quoting Peple v. Peple, 5 Va. App. 414, 422 (1988)). "Instead, 'the question must be resolved . . . in light of the facts of each case.'" Id. (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230 (1982)). The circuit court considered that A. and T. had been in foster care for twenty-seven months and found that they "deserve[d] stability." Mother had not seen the children since November 2018. The Department had reviewed with mother the requirements that she had to complete before she could be reunited with her children, but at the time of the circuit court hearing, mother still had not completed many of those requirements. For example, mother never produced a copy of her lease, did not comply with the home study, and did not participate in parent coaching. Although mother had worked with Estep for approximately eighteen months, she did not provide the Department with Estep's contact information until one week before the circuit court hearing. Estep testified that she had recommended that mother participate in therapy with a counselor trained in trauma, which Estep was not.

At the time of the circuit court hearing, mother was not in a position to have custody of A. and T. The social worker had testified that mother had just started to comply with some of the requirements, and it was as if she was "at the beginning of starting services again." The social worker further explained that if mother had complied with services, the Department could have offered her a parent coach and started a trial placement. However, mother did not comply as instructed, and A. and T. had been in foster care for more than two years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of

- 9 -

<u>Soc. Servs.</u>, 10 Va. App. 535, 540 (1990)).  Accordingly, the circuit court did not err in finding that it was in the best interests of A. and T. to terminate mother's parental rights under Code § 16.1-283(E)(i).

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds."  <u>Kilby v. Culpeper Cnty. Dep't of Soc. Servs.</u>, 55 Va. App. 106, 108 n.1 (2009); <u>see also</u> <u>Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.</u>, 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection).  Therefore, we do not need to consider whether the circuit court erred in terminating mother's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>