UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Athey and Senior Judge Humphreys

LESLIE SCOTT BOSTON, JR.

                                                        MEMORANDUM OPINION*
v.        Record No. 1390-24-3                                  PER CURIAM
                                                            MAY 20, 2025
ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                          Leisa K. Ciaffone, Judge

          (Wilson C. Pasley; Wilson C. Pasley, PLC, on brief), for appellant.

          (Timothy R. Spencer, City Attorney; Jennifer Crook Braxton,
          Assistant City Attorney; Peter H. Edwards, Guardian ad litem for
          the minor child; Law Offices of Peter H. Edwards, on brief), for
          appellee.


        Leslie Scott Boston, Jr. ("Boston") appeals the order of the Circuit Court of the City of

Roanoke ("circuit court") terminating his parental rights under Code § 16.1-283(B) and

16.1-283(C)(2).  On appeal, Boston's sole assignment of error is that because L.D.[1] came into

foster care due to Boston's difficulties maintaining stable housing and Boston has since obtained

housing with his mother, the circuit court should not have terminated his parental rights.  For the

following reasons, we disagree and affirm.[2]

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

        [1] We use initials to protect the identity of the minor child.

        [2] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

# I. BACKGROUND[3]

The Roanoke City Department of Social Services ("the Department") first became aware of Boston and his son, L.D., in June of 2015 when L.D. was born. At birth, L.D. was determined to have been exposed to numerous illegal substances including cocaine, benzodiazepines, oxycodone, and marijuana. The Department continued to have numerous contacts involving Boston and L.D. over the ensuing years. For example, during November of 2022, the Department learned that Boston and L.D. lacked stable housing while L.D.'s mother was found to be actively abusing illegal substances. In response, the Department initiated a safety plan for L.D. that included increased supervision and additional financial resources to assist with maintaining housing. These efforts by the Department were ultimately unsuccessful and as a result, L.D. was placed elsewhere with relatives. After removing L.D. from the family home, the Department discovered that L.D. had failed to receive any medical or dental care since 2018 and had not been enrolled in school since kindergarten in 2019.

From 2018 to 2023, Boston consistently refused to participate in services offered by the Department. The Department was also unable to reliably locate Boston, and even when the Department was able to contact Boston, he was noncompliant with the Department's requests. For example, Boston failed to submit any necessary background information to the Department, nor did he participate in counseling services. Similarly, Boston also failed to comply with the Department's request that he be fingerprinted, stating "[I'm] not a sex offender" and the

---

[3] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "For purposes of appellate review, a [circuit] court's determination is considered to have settled all conflicts in the evidence in favor of the prevailing party, and the prevailing party's evidence is entitled to all reasonable inferences fairly deducible therefrom." *Farley v. Farley*, 9 Va. App. 326, 328 (1990). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

Department did not "need to know" anything else about his criminal record. In addition, public records obtained by the Department reflected that Boston had an extensive record of domestic violence and violent criminal convictions. During the five-year period from 2018 to 2023, Boston also failed to participate in any psychological evaluations, parenting classes, substance abuse treatment, mental health counseling, anger management treatment, or attend L.D.'s mental health evaluations. He further failed to maintain employment, stable housing, or maintain contact with the Department. Boston also repeatedly failed to submit to drug testing by the Department. For example, on one occasion when Boston presented himself for a drug screen, he had shaved all the hair from his body and clipped his fingernails so short that any follicle or nail clipping testing was impossible. The sole drug screen that Boston participated in during this period was a urine screen, in which Boston tested positive for marijuana.

Finally, in April of 2023, L.D. was placed into foster care, where he received necessary medical treatment and was enrolled in school. Despite existing diagnoses of PTSD and other psychological conditions, L.D. showed excellent academic progress, completing summer school and catching up to a second-grade level. After three extractions of various teeth, L.D.'s dental hygiene was also dramatically improved. He was also fitted for eyeglasses to assist with vision difficulties. Ultimately, L.D. had eight of his teeth extracted, along with multiple root canals and crowns to save several of his remaining teeth. His tonsils and adenoids also had to be removed. L.D. became an active participant in football and basketball, having adjusted well to life with his foster family. He also regularly participated in counseling and therapy.

After L.D. was placed in foster care, Boston sporadically began visitation with L.D., however, Boston's behavior during those visitations he attended continued to give the Department concern. For example, Boston missed several visitation opportunities with L.D. with no recorded excuse. When Boston was present for visitation, he encouraged L.D. to engage in

physical altercations with other children if L.D. felt "slight[ed]" by them.  Boston also discussed adult matters with L.D., including a physical altercation where Boston assaulted another man with a weight plate.  Boston also discussed his drug use and accused the Department of manipulating L.D.  As a result of his behavior during visitation, the Department had L.D.'s counselor attend the next scheduled visitation.  However, when Boston entered the Department's facility for visitation and realized that the counselor would be present for the visitation, Boston left the visitation room and belligerently refused to participate.  He repeated this behavior during subsequently scheduled visitation days, refusing to participate in any visitation when the counselor was present.  Despite his behavior, the Department still offered Boston the opportunity to participate in virtual visitation, however, even in virtual visitation Boston continued to encourage L.D. to use physical violence.  When L.D. choked another child almost to the point of losing consciousness, merely because the child in question was not paying attention to L.D., the Department decided that the status quo could not endure.

On November 9, 2023, the Department sent notice to Boston that they intended to seek termination of his residual parental rights in the Roanoke City Juvenile and Domestic Relations District Court ("JDR court").  The Department then filed the requisite petition with the JDR court.  At the time the notice was sent out, Boston was incarcerated.[4]  After continuing the matter and issuing notices of the hearing by publication, the JDR court terminated Boston's parental rights and approved the foster care goal of adoption on March 11, 2024.  Boston appealed to the circuit court.

On July 22, 2024, nearly 15 months after L.D. had been placed in foster care, the circuit court held a trial de novo to determine whether to terminate Boston's residual parental rights.

---

[4] The record does not definitively establish the specific criminal charge which led to this period of incarceration.

- 4 -

After the introduction of evidence and hearing testimony on behalf of the Department and Boston, followed by closing arguments from the Department, the guardian ad litem, and Boston, the circuit court took the matter under advisement. By final order entered on August 21, 2024, the circuit court subsequently terminated Boston's residual parental rights under Code § 16.1-283(B) and 16.1-283(C)(2). In its letter opinion, the circuit court noted the abuse and neglect of L.D., including L.D.'s severe lack of dental care, his complete lack of schooling past kindergarten, Boston's lack of stable housing, Boston's complete refusal to cooperate with the Department, and Boston's inappropriate behavior during visitation.

The circuit court also found Boston's statements at the hearing to be particularly troubling, noting that one of Boston's reasons for refusing to submit to drug screens was because he did not trust the drug testing process and would not participate because "[he] can't pick and choose which drugs [he] test[s] positive for." Specifically as to housing, the circuit court noted that Boston had lived in "approximately seven residences" since the Department most recently became involved with L.D. in 2022. Although Boston claimed he was staying with his mother in Appomattox, the circuit court also credited Boston's testimony that he "often stays with various friends in the Roanoke area."

The circuit court further noted that the Department had no contact of any kind with Boston since September of 2023 and also found that L.D. was a "smart and happy young man" who was "thriving in his foster care placement." The circuit court further noted that L.D. was "afraid of [Boston]" and "does not want to visit [him]" and that it was in L.D.'s best interests to terminate Boston's parental rights. Boston appealed.

II. ANALYSIS

A. *Standard of Review*

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "On review of a [circuit] court's decision regarding the termination of parental rights, we presume the [circuit] court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

B. *The circuit court did not err by terminating Boston's parental rights.*

Boston contends that the circuit court erred when it terminated his parental rights because "the evidence presented at trial proves only that [L.D.] came into foster care due to [Boston]'s issues with maintaining stable housing and that these issues have been remedied by [Boston] moving in with [Boston]'s mother." We disagree.

To proceed with the termination of parental rights, Code § 16.1-283(C)(2) requires proof by clear and convincing evidence that (1) termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and (3) despite those services, the parent has failed, "without good cause," to remedy those conditions

"within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care." "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "Subsection C(2) specifically requires a showing that DSS has provided 'reasonable and appropriate' services to a delinquent parent prior to terminating his rights." *Toms*, 46 Va. App. at 269. "In this way, the statute establishes a time frame after the child has entered foster care for the parents 'to receive rehabilitative services to enable them to correct the conditions that led to foster care placement.'" *Id.* (quoting *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 57 (2003)).

Here, the circuit court found multiple factual bases to support its conclusion that Boston caused L.D. to be abused and neglected. The evidence of abuse and neglect included L.D.'s severely deficient dental care—requiring eight extractions and multiple root canals—and L.D.'s lack of schooling past kindergarten. Additionally, the circuit court heard sufficient evidence regarding Boston's utter lack of cooperation and compliance with the Department's numerous offerings of services, including Boston failing to meaningfully participate in any of the almost dozen services that were offered to him over a period of more than five years. Furthermore, Boston repeatedly failed to attend visitation with L.D., and when visitation did occur, Boston encouraged L.D. to act violently and otherwise inappropriately conversed with L.D. on adult subjects. The circuit court also noted that Boston's difficulties in maintaining stable housing were not automatically remedied merely because Boston was now staying with his mother in Appomattox, but Boston's housing may yet remain unstable because he "often stayed" in the Roanoke area. Accordingly, the record supports the circuit court's determination under Code

§ 16.1-283(C)(2) that Boston had been offered numerous services by the Department but still failed to remedy the conditions which led to L.D. having to be placed in foster care.

Although Boston claims that a lack of stable housing was the "the main condition that required [L.D.] to be placed in foster care," the record demonstrates that numerous additional reasons existed for the circuit court's termination of Boston's parental rights, as noted above. Boston concurs with many of these additional bases but attempts to rationalize or explain them away. For example, Boston acknowledges that he did not comply with drug testing but claims that such testing violates his rights. Similarly, he admits that he did not comply with the Department's services but argues that if he *had* complied, it would have been an admission of his own disqualification as a parent. He further asserts that his lack of attention to L.D.'s dental care should be excused due to complications relating to the COVID-19 pandemic. Boston's rationalizations concerning how his actions or inactions may have been justifiable were presented to the circuit court as factual matters to be determined by the circuit court as trier of fact. As it is the circuit court's role to evaluate and weigh the facts presented before it, we will not do so again on appeal. *Canales v. Torres Orellana*, 67 Va. App. 759, 787-88 (2017) (en banc) ("[T]his Court cannot re-weigh the evidence or alter the circuit court's credibility determinations.").

The circuit court also found that L.D. was "thriving" in his foster placement and that L.D. had no desire to visit Boston because L.D. was afraid of him. L.D. has spent approximately 15 months in foster care, and it is not in L.D.'s best interests to remain in such a state of uncertainty. *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004) ("It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." (quoting *Kaywood v. Halifax Cnty.*

*Dep't of Soc. Servs.*, 10 Va. App. 535, 540 (1990))). Accordingly, we affirm the circuit court's termination of Boston's residual parental rights under Code § 16.1-283(C)(2).[5]

### III. CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court.

*Affirmed.*

---

[5] Having found that the circuit court did not err in terminating Boston's parental rights under Code § 16.1-283(C)(2), we need not address whether his parental rights were also subject to termination under Code § 16.1-283(B). *Castillo*, 68 Va. App. at 574 n.9 ("When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment."); *see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs.*, 46 Va. App. 1, 8 (2005) (affirming termination of parental rights under one subsection of Code § 16.1-283 and declining to address termination of parental rights under another subsection).